*By order of the Bankruptcy Appellate Panel, the precedential effect
of this decision is limited to the case and parties pursuant to
6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 19b0004n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: ANTHONY W. ROBERSON; JOI N. ROBERSON,

                       *Debtors.*

No. 17-8041

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.
No. 16-11784—Arthur I. Harris, Judge.

Decided and Filed: May 30, 2019

Before: BUCHANAN, DALES and HUMPHREY, Bankruptcy Appellate Panel Judges.

_____

### COUNSEL

**ON BRIEF:** Stephen D. Hobt, Cleveland, Ohio, for Appellant. Charles J. Van Ness, Mayfield Heights, Ohio, for Debtors.

_____

### OPINION

_____

BETH A. BUCHANAN, Bankruptcy Appellate Panel Judge. GCB Properties III, Ltd. appeals the bankruptcy court's determination that any rent owed to GCB Properties III, Ltd. by the debtors for their occupancy of the property during the bankruptcy case was deemed to be a pre-petition debt and was discharged as part of the debtors' chapter 7 bankruptcy case.

## I. ISSUES ON APPEAL

The issues Appellant raises are:

1. Whether the bankruptcy court erred in determining that, as a matter of law, Appellant, GCB Properties III, Ltd., holds no claim against the Appellees, Anthony and Joi Roberson, for their post-petition tenancy in the premises that was the subject of a pre-petition lease between the parties.

2. Whether the bankruptcy court erred in determining that, as a matter of law, any and all claims arising in favor of the Appellant, GCB Properties III, Ltd., against the Appellees, Anthony and Joi Roberson, for the Appellees' occupancy of the leased premises after the filing of the bankruptcy case under chapter 7 of the Bankruptcy Code were subject to the Appellees' discharge in the bankruptcy case despite the fact such claims arose after the filing of the Appellees' bankruptcy case.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A "final" order of a bankruptcy court may be appealed by right under 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 797, 109 S. Ct. 1494, 1497 (1989) (internal quotations and citations omitted). The order in the present case resolves the litigation on the merits and leaves nothing for the bankruptcy court to do. The determination of the nature of a claim arising from a debtor's occupancy of property during a bankruptcy case is a question of law and is reviewed de novo. *See Giant Eagle, Inc. v. Phar-Mor, Inc.*, 528 F.3d 455, 461 (6th Cir. 2008) (citing *In re S. Air Transp., Inc*., 511 F.3d 526, 530 (6th Cir. 2007)).

## III. FACTS

Anthony and Joi Roberson (together the "Robersons") entered into a lease with GCB Properties III, Ltd. ("GCB") related to property in Cleveland, Ohio sometime in December 2014. The monthly rent owed was $897. In December 2015, the parties renewed the lease through

January 2017.  On February 10, 2016, the Robersons received a "Notice to Leave Premises" due to non-payment of rent.

The Robersons filed a voluntary chapter 7 bankruptcy petition on April 1, 2016.  They listed a disputed unsecured claim for "Cleveland Real Estate Pros," which is a dba for GCB, in the amount of $4,103 for "rent" on their Schedule E/F.  The Robersons also listed the apartment lease on their Schedule G.  They indicated in their Statement of Intention that they did not intend to assume the lease and the chapter 7 trustee took no action to assume the lease.

The chapter 7 trustee filed a "no asset" report with the bankruptcy court on June 28, 2016.  The bankruptcy court entered the Robersons' discharge on July 13, 2016.

Following the Robersons' filing of the bankruptcy petition, GCB continued its efforts to evict the Robersons and to collect unpaid rent.  Between April 5, 2016 and June 25, 2016, GCB delivered to the Robersons two additional Notices to Leave Premises and sent two emails threatening eviction and requesting payment.  In addition, an attorney sent a letter on behalf of GCB attempting to collect payment.

On June 28, 2016, the Robersons filed a motion for sanctions against GCB based on allegations that it had made collection efforts and had threatened to evict them in violation of the automatic stay.  While the motion for sanctions was pending, GCB filed an action to evict the Robersons, but this action was voluntarily dismissed without prejudice by GCB due to procedural issues on August 22, 2016.  The Robersons eventually moved out of the property on September 30, 2016 having paid no rent from the petition date through the date they left the premises.

On October 11, 2016, the bankruptcy court conducted an evidentiary hearing on the Robersons' motion for sanctions.  In its opinion and order entered on November 10, 2016, the bankruptcy court held that GCB's actions constituted a "willful violation of the automatic stay"

under § 362,[1] and awarded actual damages of $1,680 to the Robersons under § 362(k).  GCB did not appeal the bankruptcy court's November 10, 2016 decision and order.

The Robersons' bankruptcy counsel contacted GCB's counsel on January 3, 2017 to inquire about payment of the $1,680 damages award and was advised in writing that GCB credited the award against the Robersons' post-petition rental obligation.

The Robersons thereafter filed a motion to show cause why GCB should not be found in contempt and sanctioned for failure to pay the $1,680 attorney fee award.  The bankruptcy court rendered an oral decision, and entered an order denying the Robersons' motion without prejudice on August 8, 2017.  The bankruptcy court declined to find GCB in contempt because its November 10, 2016 order did not clearly prohibit setoff as a means of satisfying the previous ruling.

On August 23, 2017, the Robersons filed a motion to amend the bankruptcy court's November 10, 2016 order to clarify that no right of setoff exists. GCB objected.  The bankruptcy court heard oral argument on October 2, 2017 and took the matter under advisement.

On December 6, 2017, the bankruptcy court issued its Memorandum of Opinion.  *In re Roberson*, No. 16-11784, 2017 WL 6060598 (Bankr. N.D. Ohio Dec. 6, 2017).  The bankruptcy court granted the Robersons' motion and amended the court's November 10, 2016 order "to clarify that the creditor's purported claim for post-petition rent was discharged, leaving the creditor with no claim to set off."  *Roberson*, 2017 WL 6060598 at *2.  GCB timely filed an appeal of this ruling.

## IV.  ANALYSIS

Section 365 of the Bankruptcy Code addresses the treatment of executory contracts and unexpired leases in bankruptcy cases.  A trustee may assume or reject an unexpired lease of the debtor.  11 U.S.C. § 365(a).  In a chapter 7 case, if the lease is an unexpired lease of residential

---

[1]Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

real property, the trustee must decide whether to assume or reject the lease within 60 days[2] of the petition date or the lease will be deemed rejected. 11 U.S.C. § 365(d)(1).

At no time has GCB disputed that the Robersons' lease qualified as an "unexpired lease of residential real property" on the petition date. Rather, all parties proceeded on the basis that the lease was an unexpired lease under § 365. They further agree that the lease was deemed rejected on May 31, 2016, 60 days after the petition filing date, pursuant to § 365(d)(1). The parties disagree, however, on what effect the deemed rejection of the lease had on GCB's claim based on the Robersons' post-rejection occupancy of the leased premises.

The bankruptcy court held that, upon the deemed rejection of the lease by the trustee, any debt owed to GCB under the lease, including post-petition rent, was to be treated as a discharged pre-petition debt. The bankruptcy court relied on the express language of §§ 365(g)(1) and 727(b), as well as the Sixth Circuit's interpretation of these Bankruptcy Code provisions in *Miller v. Chateau Cmtys, Inc.* (*In re Miller*), 282 F.3d 874 (6th Cir. 2002).

Rejection of an unexpired lease constitutes a breach of the lease that occurred immediately prior to the petition date. 11 U.S.C. § 365(g)(1). "[A] debtor's rejection of an executory contract[3] in bankruptcy has the same effect as a breach outside bankruptcy." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, No. 17–1657, 587 U.S. ___, ___ S. Ct. ___, 2019 WL 2166392, at *9 (U.S. May 20, 2019).

In addition, § 502(g)(1) states that: "[a] claim arising from the rejection, under [§ 365] . . . shall be allowed under subsection (a), (b), or (c) of this section or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(g)(1). Among other debts, § 727(b) provides for the discharge of "any liability on a claim that is determined under [§ 502] as if such claim had arisen before the commencement of the case[.]" 11 U.S.C. § 727(b). In *Miller*, the Sixth Circuit concluded that the plain language of § 727(b) provides for the discharge of both pre-petition and

---

[2]Within this 60-day period, the court can extend the deadline to assume or reject for cause. 11 U.S.C. § 365(d)(1).

[3]Although *Mission* deals specifically with an executory contract, the effect of rejection is the same for unexpired leases. *See* 11 U.S.C. § 365(g)(1).

post-petition liabilities resulting from a breach of a lease due to its deemed rejection under § 365. *Miller*, 282 F.3d at 877. Accordingly, the bankruptcy court concluded that GCB became an unsecured creditor with a pre-petition claim for damages, including any damages for post-petition rent, upon rejection of the lease.

GCB does not seem to quibble with the bankruptcy court's conclusion that rent owed under the lease for the Robersons' post-petition but pre-rejection occupancy of the leased premises was discharged in the Robersons' bankruptcy.[4] GCB, however, takes exception to the bankruptcy court's conclusion that GCB's claim for the Robersons' post-rejection occupancy of the leased premises was also discharged. GCB argues that the bankruptcy court read *Miller* too broadly when it concluded that post-petition obligations under the lease are always pre-petition claims arising from the deemed rejection of a residential lease under § 365. In support of its position, GCB points out the following passage from *Miller*:

> The bankruptcy court correctly determined and, the district court agreed, that plaintiff did not incur any new post-petition liability for the lease after she rejected it. She did not use and occupy the lot subsequent to the rejection of the lease with defendant that occurred on September 12, 1999. In fact, plaintiff vacated the premises prior to filing for her petition for relief with the bankruptcy court on July 14, 1999 and indicated an intention to abandon the mobile home.

*Miller*, 282 F.3d at 878. GCB suggests that the Sixth Circuit in *Miller* left open the possibility for a post-rejection claim for damages based on a debtor's continued use and occupancy of the leased premises.

Indeed, GCB notes that two bankruptcy courts have held that a landlord possessed a claim for a debtor's post-rejection occupancy of leased premises that was not discharged in bankruptcy. *In re Werbinski*, 271 B.R. 514 (Bankr. E.D. Mich. 2001) (concluding that rejection of a lease effects an abandonment of the lease back to the debtor so that a landlord may pursue rent or eviction for post-rejection occupancy unhindered by the discharge); *Johnson v. Manatee Bay Apartments Corp.* (*In re Johnson*), 460 B.R. 328 (Bankr. S.D. Fla. 2011) (determining that

---

[4]In its brief, GCB at times frames the issue of damages in the context of the Robersons' post-*petition* occupancy of a leased premises. At other times, GCB discusses damages for the Robersons' post-*rejection* occupancy of a leased premises. The Panel presumes GCB means the latter given that the case law on which GCB relies speaks to a debtor's post-*rejection* occupancy of a leased premises.

the landlord and tenant's continued performance of obligations under the lease post-rejection waived the rejection damages and continued the lease in force so that any future breach would not arise from rejection but from a subsequent default subject to enforcement under applicable state law).**5** Starting with § 727(b)'s reference to § 502 and building on the *Werbinski* and *Johnson* decisions, GCB notes that § 502(g)(1) provides that only "claims arising from the rejection" of an unexpired lease under § 365 are deemed to have arisen before the petition filing date and are therefore discharged. GCB maintains that its claim for post-rejection damages did not arise from the rejection of the lease but, instead, was an independent claim for damages under applicable state law. GCB bases its claim for damages on the premise that the Robersons became "holdover tenants" under Ohio law upon the deemed rejection of the lease in their bankruptcy case, making the Robersons liable for the reasonable value of the use and occupancy of the premises or damages for trespass from that point onward.

Under Ohio law, a tenant becomes a holdover tenant or tenant in sufferance, when the tenant continues in possession of the leased premises <u>after</u> termination of the lease. *Bliss Props. v. Hughes-Peters*, 1996 WL 339976, at *2 (Ohio Ct. App. June 20, 1996) ("Generally, a tenant's continued possession after termination of a lease renders the tenant a holdover tenant."); *Steiner v. Minkowski*, 596 N.E. 2d 492, 497 (Ohio Ct. App. 1991) ("Appellants were duly notified that the tenancy would terminate as of April 29, 1989. After that date, the [Appellants] became holdover tenants or tenants by sufferance."); *Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc.*, 526 N.E.2d 321, 324 (Ohio Ct. App. 1987) ("In Ohio, a tenant who holds over after the term of his lease expires is a tenant at sufferance.").

In reaching its conclusion that the Robersons were holdover tenants, GCB argues that the deemed rejection of the lease in bankruptcy terminated the lease. See Appellant's Br. at 11, ECF No. 11 ("Upon the rejection of a lease obligation under the provisions of 11 U.S.C. § 365(d)(1), the lease ceases to exist as a legal obligation between the debtor and the landlord.").

---

**5**The *Werbinski* court's determination that a landlord may possess a post-rejection claim against debtor-tenants arising from a pre-petition lease that is not discharged stands in stark contrast to the bankruptcy court's determination below. *See Roberson*, 2017 WL 6060598 at *4–5 (rejecting the *Werbinski* conclusion that "rejection effects an abandonment" and holding that a landlord does not retain a post-rejection claim against debtor–tenants when they simply remain on the premises). This creates an apparent split within the Sixth Circuit. However, the Panel does not reach the issue because GCB's premise is without merit.

GCB misapprehends the effect of rejection under bankruptcy law.  The Supreme Court recently looked at the plain language of § 365(g) and noted that its broad terms speak to any executory contract, thus, holding that, "a rejection does not terminate [a] contract" and that "a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside bankruptcy."  *Mission*, 2019 WL 2166392, at *6,*9.  This is in line with the case law in this circuit.  *See Miller*, 282 F.3d at 878 ("The rejection of the lease under § 365(d)(1) is not a termination[.]"); *Simmons Capital Advisors, Ltd. v. Bachinski* (*In re Bachinski*), 393 B.R. 522, 544 (Bankr. S.D. Ohio 2008) ("[R]ejection does not 'nullify,' 'rescind,' or 'vaporize' the contract or terminate the rights of the parties[.]") (internal quotation marks and citation omitted).

The *Mission* Court noted that when a debtor in possession or trustee chooses to reject, and therefore breach, an executory contract, the counterparty also has a choice: "when a contract is breached in the course of performance, the injured party may elect to continue the contract or refuse to perform further[.]"  2019 WL 2166392, at *5 (quoting 13 R. Lord, Williston on Contracts §39:32, pp. 701–702 (4th ed. 2013)).[6]  In other words, while bankruptcy law does not terminate the contract, general contract law may give the counterparty the option to terminate or continue to perform under the contract "while suing for whatever damages go with its choice." *Id.* at *6.[7]  However, the *Mission* majority held, and the concurrence emphasized, that in specific cases, the counterparty's option to terminate the contract, may be regulated by a special contract term or state law.  *Id.* at *6, *9 (Sotomayor, J. concurring).  In this case, Ohio landlord tenant law regulates the manner in which GCB may terminate the lease.  *See* Ohio Rev. Code Chapters 1923, 5303, and 5321.

Other than the deemed rejection of the lease, GCB offers no other event that caused or resulted in the termination of the lease.[8]  In the absence of the lease having been terminated

---

[6]One common instance when landlords choose to continue performance under the contract is when the debtor is current on rent payments.

[7]The one "twist" § 365(g)(1) makes to the normal law of contracts is that the breach resulting from the rejection is deemed to have occurred immediately before the date of the filing of the petition.  *Mission*, 2019 WL 2166392, at *6.

[8]While GCB cites *Bliss, Craig Wrecking Co., and Steiner*, which all discuss a tenant's obligations to the landlord upon termination of a lease under Ohio law, GCB fails to explain the basis for the lease being terminated in

under a special contract term or state law, there is no basis for the Panel to conclude that the Robersons were holdover tenants under Ohio law.

The Panel cannot overstate the narrow gauge of this opinion, which is premised solely upon the conclusion that rejection of an unexpired lease under § 365(g) creates a breach of the lease, not a termination. Because GCB relied exclusively on its contrary view, the Panel finds no error in the bankruptcy court's ruling.

## V. CONCLUSION

GCB's claim for recovery of post-rejection damages based on the Robersons' continued occupancy of the leased premises as holdover tenants fails. The deemed rejection of the lease did not terminate it and, thus, did not result in the Robersons' becoming holdover tenants under state law. Accordingly, the Panel AFFIRMS the bankruptcy court's determination that GCB failed to establish a post-rejection claim against the Robersons that survives the bankruptcy discharge.

---

this case other than its erroneous conclusion that the deemed rejection of the lease terminated the lease or the obligations of the parties under the lease.